<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

August 7, 2023

Rubin Sinins
Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins
505 Morris Avenue
Springfield, NJ 07081
*Counsel for Defendant Carolyn Jackson*

Carol Dominguez
Office of the Federal Public Defender
1002 Broad Street
Newark, NJ 07102
*Counsel for Defendant John E. Jackson*

Desiree L. Grace
Office of the United States Attorney
970 Broad Street
Newark, NJ 07102
*Counsel for the United States of America*

<u>**LETTER OPINION FILED WITH THE CLERK OF THE COURT**</u>

    **Re:**    *United States v. Carolyn Jackson, et al.*
             **Criminal Action No. 13-290 (SDW)**

Counsel:

    Before this Court is Defendants Carolyn Jackson ("Carolyn") and John E. Jackson's ("John," together with Carolyn, "Defendants") motion to bar the imposition of further sentences (D.E. 493, 495 ("Motion")). This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendants' Motion.

**<u>DISCUSSION</u>**

A.

    The facts of this case have been extensively covered—in a 39-day trial, in multiple sentencing proceedings, and in three separate opinions by the Third Circuit. Accordingly, this Court's recitation of the facts includes only those pertinent to resolving the instant Motion.

John, a former major in the United States Army, and Carolyn, his wife, "inflicted devastating abuse on their three young foster children—Joshua, J, and C—over the course of five years, causing serious and lasting harm." (D.E. 487-1 at 3.) The abuse occurred, at least in part, on Picatinny Arsenal Installation in Morris County, New Jersey.[1]

Defendants were first indicted in federal court on April 29, 2013. (D.E. 1.) Trial began in October 2014. (D.E. 116 at 2). On November 14, 2014—the fifteenth day of the first trial—the presiding judge, the Hon. Katharine S. Hayden, U.S.D.J., granted Defendants' motion for a mistrial. (*See generally* D.E. 151, 157.) On January 15, 2015, in a 15-count superseding indictment, the Government again charged Defendants. (D.E. 175.)

On July 8, 2015, following a 39-day jury trial, Defendants were found guilty of the following: conspiring from August 2005 to April 2010 to engage in acts that endangered their three foster children (Count 1); physically assaulting all three children with various objects and their hands (Counts 3, 6, and 12); withholding adequate water from J and C and prohibiting these children from drinking water (Counts 4 and 8); forcing J to ingest hot sauce, red pepper flakes, and raw onion, and forcing C to ingest hot sauce and red pepper flakes (Counts 5 and 9); and withholding prompt and proper medical care for C's dehydration and elevated sodium levels (Count 11). (*See generally* D.E. 353, 354.) In addition, the jury found Carolyn—but not John—guilty of withholding sufficient nourishment and food from Joshua (Count 2), and "[c]ausing [C] to ingest excessive sodium and a sodium-laden substance while restricting [C's] fluid intake, causing [C] to suffer hypernatremia and dehydration, a life[-]threatening condition," (Count 10). (D.E. 487-1 at 4; *see also* D.E. 353 at 1, 3.)

### Sentencing History

Since the jury pronounced its verdict, Defendants have been thrice sentenced, and each time, the Third Circuit has vacated those erroneous sentences. Defendants' first sentencing occurred on December 15, 2015. (D.E. 407, 408.) Prior to that sentencing, the Probation Office calculated the United States Sentencing Commission Guidelines ("Guidelines") range of 210 to 262 months for each Defendant. (D.E. 487-1 at 4.) The Government similarly calculated a Guidelines range of 292 to 365 months but only sought sentences of 235 months for Carolyn and 188 months for John. (D.E. 420-1 at 6.) Following a 10 1/2-hour hearing, Carolyn was sentenced to a term of 24 months' imprisonment followed by three years of supervised release, and John received a three-year term of probation accompanied by 400 hours of community service and a $15,000 fine. (D.E. 407–11.) On January 21, 2016, the Government appealed. (D.E. 413, 414.)

On July 6, 2017, the Third Circuit vacated Defendants' sentences. (*See generally* D.E. 419, 420-1). In a lengthy opinion, Circuit Judge Cowen thoroughly analyzed "a number of rather unusual sentencing issues" implicated in this case, (D.E. 420-1 at 8), and ultimately held that the Sentencing Court (i) committed reversible error and (ii) imposed substantively unreasonable sentences, (*see generally id.*). The Third Circuit then remanded the case for resentencing. (*See generally id.*)

---

[1] As the Third Circuit explained, "the offenses at issue here—because they occurred on a military installation under the special jurisdiction of the federal government—were assimilated under the [Assimilative Crimes Act ("ACA")]." (D.E. 420-1 at 47.) The ACA "is designed to borrow state laws in order to fill gaps that exist in federal criminal laws with respect to criminal offenses that are committed on federal enclaves." (*Id.* at 8.)

Defendants' first resentencing occurred over the course of two days—April 11 to April 12, 2018. (D.E. 437, 438.) At the conclusion of that hearing, Carolyn was sentenced to a term of 40 months' imprisonment followed by three years of supervised release, and John received a three-year term of probation accompanied by 400 hours of community service. (*See generally* D.E. 439, 440.) On May 21, 2018, the Government again appealed,[2] (D.E. 443, 444), and on June 26, 2020, the Third Circuit again vacated Defendants' sentences and remanded the case for resentencing, (*see generally* D.E. 451, 452-2).

The second resentencing was held on October 6, 2021. (D.E. 476, 477.) At that time, the Government calculated a Guidelines range of 108 to 135 months for each Defendant, Defendants calculated their Guidelines range as 57 to 71 months, and the Sentencing Court calculated a Guidelines range of 70 to 87 months for each Defendant. (*See generally* D.E. 482.) The Sentencing Court "varied significantly downward from those ranges," however: Carolyn was sentenced to a term of 40 months' imprisonment (which the Sentencing Court deemed time-served) plus one additional year of supervised release, and John was sentenced to an 18-month term of home confinement. (D.E. 487-1 at 5–6; *see also* D.E. 482 at 151–55.) On November 15, 2021, the Government once again appealed. (D.E. 478, 479.)

In October 2022—while the Government's most-recent appeals were still pending before the Third Circuit—Carolyn completed her term of supervised release.[3] (*See id.* at 6.) Just two months later, in December 2022, the parties participated in oral argument before the Third Circuit. (D.E. 487 at 2; D.E. 494 at 3.)

On April 3, 2023, the Third Circuit again vacated Defendants' sentences. (*See generally* D.E. 487.) In remanding the case, the Third Circuit instructed that this case be assigned to a different judge, (D.E. 487-1 at 11–12), and on April 19, 2023, Chief Judge Renee M. Bumb assigned it to this Court, (D.E. 485). Resentencing has been set for October 11, 2023. (D.E. 490.)

B.

Carolyn filed the instant Motion on May 18, 2023.[4] (D.E. 493.) The Government filed its opposition on May 24, 2023. (D.E. 494.) One week later, Carolyn filed a reply, (D.E. 497), which John joined and supplemented on June 23, 2023, (D.E. 498). At bottom, Defendants argue that the imposition of any further sentence would violate their rights under both the Double Jeopardy and Due Process Clauses of the Constitution.

C.

Defendants' arguments contradict precedent and practical application, and therefore the Motion must be denied.

---

[2] John contends that his three-year term of probation ended on September 19, 2019, while the Government's appeals of the April 2018 sentences were pending before the Third Circuit. (D.E. 498 at 1.)

[3] On October 11, 2022, the Probation Office for the Middle District of Florida advised Carolyn that her "supervision officially terminated," and that she "ha[d] no further obligation to th[at] office." (D.E. 493-2 at 6.) In February 2023, the State of Florida restored Carolyn's voting rights. (*Id.* at 8.)

[4] On May 30, 2023, John "join[ed] Carolyn Jackson's letters and motions filed to date." (D.E. 495.)

**The Double Jeopardy Clause**

The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. This constitutional guarantee "affords three protections to the criminal defendant." *Jones v. Thomas*, 491 U.S. 376, 380–81 (1989). "The first two[] . . . protect against a second prosecution for the same offense, and against a second prosecution for the same offense after conviction." *Id.* at 381 (citing *Ohio v. Johnson*, 467 U.S. 493, 498 (1984)). The third such protection safeguards criminal defendants "against 'multiple punishments for the same offense' imposed in a single proceeding." *Id.* (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

The Supreme Court has identified "two vitally important interests" embodied by the Double Jeopardy Clause:

> The first is the "deeply ingrained" principle that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." The second interest is the preservation of "the finality of judgments."

*Yeager v. United States*, 557 U.S. 110, 117–18 (2009) (internal citations omitted). Because of these vital interests, "[a]n acquittal is accorded special weight" under the Double Jeopardy Clause. *United States v. DiFrancesco*, 449 U.S. 117, 129 (1980). Indeed, "'[t]he constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal,' for the 'public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though "the acquittal was based upon an egregiously erroneous foundation."'" *Id.* (quoting *Fong Foo v. United States*, 369 U.S. 141, 143 (1962)).

The foregoing interests do not apply with equal force in the context of an appealed noncapital sentence.[5] *Id.* at 730. As the Supreme Court explained in *United States v. DiFrancesco*:

> The double jeopardy considerations that bar reprosecution after an acquittal do not prohibit review of a sentence. We have noted . . . the basic design of the double jeopardy provision, that is, as a bar against repeated attempts to convict, with consequent subjection of the defendant to embarrassment, expense, anxiety, and insecurity, and the possibility that he may be found guilty even though innocent. These considerations, however, have no significant

---

[5] In *Bullington v. Missouri*, the Supreme Court held that the Double Jeopardy Clause applies to capital-sentencing proceedings where such proceedings "have the hallmarks of [a] trial on guilt or innocence." 451 U.S. 430, 439 (1981). The Supreme Court expressly "confined" *Bullington*'s rationale "to the unique circumstances of capital sentencing," and reiterated "that the Double Jeopardy Clause does not preclude retrial on a prior conviction allegation in the noncapital sentencing context." *Monge v. California*, 524 U.S. 721, 734 (1998).

>application to the prosecution's statutorily granted right to review a sentence.

*DiFrancesco*, 449 U.S. at 136. Therefore, the Supreme Court stated, when the government exercises a statutorily granted right to appeal a sentence, a defendant has "no expectation of finality in his sentence until the appeal is concluded or the time to appeal has expired." *Id.* The Third Circuit does not deviate from that principle. *See United States v. Norwood*, 49 F.4th 189, 211 (3d Cir. 2022) ("A defendant may not have a legitimate expectation in the finality of his sentence where the law explicitly provides for the possibility that a sentence may be later increased . . . ." (citing *DiFrancesco*, 449 U.S. at 137)).

Here, the Government had a right under 18 U.S.C. § 3742(b) to appeal Defendants' sentences and, in fact, timely appealed. Defendants, then, "ha[d] no expectation of finality in [their] sentence[s] until the appeal [was] concluded" in their favor. *DiFrancesco*, 449 U.S. at 136. In other words, once the Government filed its timely appeals, it eviscerated any expectation of finality the Defendants may have had in their sentences. *See id.* at 139 ("Although it might be argued that the defendant perceives the length of his sentence as finally determined when he begins to serve it, . . . that argument has no force where . . . Congress has specifically provided that the sentence is subject to appeal. Under such circumstances there can be no expectation of finality in the original sentence." (internal citations omitted)).

Defendants insist that *DiFrancesco*'s rationale does not control here. (D.E. 493-1 at 8–16.) Instead, Defendants cull together dicta from non-binding and inapposite cases to support an "I-finished-my-sentence" exception to *DiFrancesco*'s unambiguous holding. (*Id.*) That exception is unfounded. Neither the Supreme Court nor the Third Circuit[6] has adopted it, and this Court declines to do so now.

---

[6] Although Defendants assert that the Third Circuit's decision in *United States v. McMillen* left open the possibility that "a defendant who has completely satisfied his sentence may have a reasonable expectation of finality as to the completed sentence," the *McMillen* Court expressly declined to rule on the issue. 917 F.2d 773, 777 n.5 (3d Cir. 1990). Defendants cannot reverse engineer that dictum into a bright-line, "I-finished-my-sentence" exception. To be sure, such an exception in the double-jeopardy context would defy precedent and fundamental considerations. As the Supreme Court has unequivocally stated,

>This Court has rejected the "doctrine that a prisoner, whose guilt is established by a regular verdict, is to escape punishment altogether because the court committed an error in passing the sentence." The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner. In this case the court "only set aside what it had no authority to do, and substitute[d] directions required by the law to be done upon the conviction of the offender." It did not twice put petitioner in jeopardy for the same offense. The sentence, as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense.

*Bozza v. United States*, 330 U.S. 160, 166–67 (1947) (internal citations omitted); *see also United States v. Busic*, 639 F.2d 940, 946 (3d Cir. 1981) ("Nothing in the history or policy of the [Double Jeopardy] clause suggests that its purposes included protecting the finality of a sentence and thereby barring resentencing to correct a sentence entered illegally or erroneously."). Put differently, "neither the Double Jeopardy Clause nor any other constitutional provisions exist to provide unjustified windfalls." *Jones*, 491 U.S. at 387. Defendants' suggested exception, however,

## The Due Process Clause

Defendants' arguments under the Due Process Clause are equally strained. The Due Process Clause of the Fifth Amendment states that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. The Due Process Clause applies to "the sentencing process," *Gardner v. Florida*, 430 U.S. 349, 358 (1977), and it has developed "both substantive and procedural components," *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 658 (3d Cir. 2011) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). On the one hand, "[t]he substantive component of the Due Process Clause limits what government may do regardless of the fairness of the procedures that it employs." *Id.* at 659 (quoting *Boyanowski v. Cap. Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000)). On the other hand, "[p]rocedural due process governs the manner in which the government may infringe upon an individual's life, liberty, or property." *Id.* at 662. "The Clause 'centrally concerns the fundamental fairness of governmental activity.'" *N.C. Dep't of Revenue v. The Kimberley Rice Kaestner 1992 Fam. Tr.*, 139 S.Ct. 2213, 2219 (2019) (quoting *Quill Corp. v. North Dakota*, 504 U.S. 298, 312 (1992)).

In *United States v. Davis*, the Third Circuit noted that the principles of fundamental fairness underlying the Due Process Clause may bar a district court from imposing a "later upward revision of a sentence." 112 F.3d 118, 123 (3d Cir. 1997) (citing *DeWitt v. Ventetoulo*, 6 F.3d 32, 35 (1st Cir. 1993), *cert. denied*, 511 U.S. 1032 (1994)). Specifically, the Third Circuit remarked:

> A defendant's due process rights may be violated "when a sentence is enhanced after the defendant has served so much of his sentence that his expectations as to its finality have crystallized and it would be fundamentally unfair to defeat them." A defendant, however, does not automatically acquire a vested interest in a shorter, but incorrect sentence. It is only in an extreme case that a later upward revision of a sentence is so unfair that it is inconsistent with the fundamental notions of fairness found in the due process clause.

*Id.* (internal citations omitted). "[T]o determine whether the defendant lacked a legitimate expectation of finality," the Third Circuit looked to three factors: (1) "whether the defendant himself challenged the sentence," (2) "whether the defendant has completed his prison term," and (3) "whether the resentencing gives the defendant a lower overall sentence." *United States v. Grasso*, 197 F. App'x 200, 205 (3d Cir. 2006) (citing *Davis*, 112 F.3d at 123–24).

Defendants argue that *Davis* controls and prohibits this Court from resentencing them. (D.E. 493-1 at 17.) Defendants' reliance on *Davis* is misplaced. The posture of *Davis*—a resentencing in a habeas proceeding long after the time to file direct appeals had expired—is wholly different from the case at bar, and thus *Davis* does not apply here.[7] A recent decision in this District further supports that conclusion.

---

would undoubtedly do so—that is, erroneously low sentences that expire before the appellate court has a chance to rule would become infallible.

[7] To be sure, the *Davis* factors are plainly incompatible in this case—indeed, their application in this context would yield absurd results. For instance, in cases where the government exercises its statutorily granted right to appeal an

In *Locane v. McGill*, the petitioner, Amy Locane, was subjected to several resentencing hearings in state court following erroneous sentencing decisions by trial judges. Civ. No. 21-8888, 2022 WL 17625976, at *1–3 (D.N.J. Dec. 13, 2022). Locane claimed that the final resentencing violated her due process rights because it was imposed after she had served "both her original prison sentence and supervised release term." *Id.* at *8. In rejecting Locane's argument, Judge Shipp held:

> The context of [*Davis*'] holding—a resentencing in a habeas proceeding long after direct appeals had ended—is substantially different from the one presented in this matter. [Locane] at no point had a true expectation of finality in her sentence as the State appealed each of the first three sentences within days of their issuance and well within the statutory time period, unlike a petitioner who is resentenced long after any direct appeal concluded and following collateral proceedings.

*Id.* This Court is persuaded by the logic set forth in *Locane*,[8] and similarly finds that *Davis* is inapplicable to the case at bar.

In this Court's view, criminal defendants can have no true expectation of finality in cases where, as here, the government timely exercises its statutorily granted right to file a direct appeal of an erroneous sentence. *See, e.g.*, *United States v. Arrellano-Rios*, 799 F.2d 520, 524 (9th Cir. 1986) ("There can be no expectation of finality in sentences that are illegal and that were under challenge by the government from the moment the district court judges suggested the sentences they proposed to impose." (citation omitted)). This matter presents no exception to that rule.

Even if, as Defendants suggest, the fundamental fairness inquiry is "necessarily . . . fact-sensitive," the facts of this case do not weigh in their favor. (D.E. 497 at 13.) Carolyn claims that she had an expectation in the finality of her sentence on October 5, 2022—the day her one-year term of supervised release concluded. (D.E. 493-1 at 8.) By that time, however, the Government had already filed its appeal to the Third Circuit, and the parties had fully briefed it. Furthermore, in December 2022—just two months after Carolyn purportedly believed that her sentence was final—her attorneys were arguing the appeal before the Third Circuit. Carolyn, represented by able counsel, undoubtedly knew that the Government's direct appeal challenging the validity of her sentence was still pending. She plainly did not have a crystallized expectation in the finality

---

erroneous sentence, two of the three *Davis* factors—whether the defendant challenged the sentence and whether resentencing would give him a lower overall sentence—would automatically favor a defendant. And, in the case of an erroneously low sentence that lapses before the appellate court has time to address its validity, all three factors would instantly weigh in the defendant's favor. Such a rule would "provide unjustified windfalls" to criminal defendants, *Jones*, 491 U.S. at 387, by allowing them to "escape punishment simply because the court committed error in passing sentence," *Evans*, 645 F.3d at 662.

[8] Notably, after Judge Shipp denied Locane's motion, Locane filed with the Third Circuit a request for a certificate of appealability. In denying Locane's request, the Third Circuit stated, "Essentially for the reasons given by the District Court, Locane has not shown that jurists of reason would debate the District Court's decision to deny her Double Jeopardy and Due Process claims." *Locane v. McGill*, No. 23-1072, 2023 WL 4491755, at *1 (3d Cir. May 17, 2023) (citing *Monge*, 524 U.S. at 724–30 and *DiFrancesco*, 449 U.S. at 139).

of her sentence. For similar reasons, John had no true expectation of finality in his erroneous sentence of probation that expired during the pendency of the Government's second appeal.[9]

In sum, Defendants, both represented by able counsel, were fully aware that the Government had timely filed direct appeals challenging the Sentencing Court's sentencing decisions. Under such circumstances, Defendants could have no crystallized expectation of finality in their sentences. Therefore, neither the Double Jeopardy Clause nor the principles of fundamental fairness underlying the Due Process Clause bar this Court from imposing a further sentence,[10] and Defendants' Motion must be denied.

\* \* \*

In conducting Defendants' second resentencing—*i.e.*, the third sentencing—Judge Hayden aptly noted the "tortured procedural history" of this case:

> Carolyn Jackson has served 40 months [in prison]. She served it in two separate sentences. Twice she has surrendered. Twice she has served her sentence. Twice she has been mustered out. Twice she has been put on supervised release . . . .
>
> John Jackson . . . . has been given two terms of probation. He has served them. He is finished. One very important point . . . is that Mr. Jackson wound up with a better sentence the second time than the first time . . . .

(D.E. 482 at 139, 143.) Since that hearing, Defendants' already-protracted sentencing history has been further prolonged. Judicial error is largely to blame. And while the Constitution demands that, upon resentencing, this Court "fully credit" the "punishment already exacted" on Defendants, *McMillen*, 917 F.2d at 777 (quoting *Pearce*, 395 U.S. at 718–19), it does not require that Defendants "escape punishment simply because the court committed error in passing sentence," *Evans*, 645 F.3d at 662 (citing *Busic*, 639 F.2d at 946).

---

[9] John contends that, because his term of probation ended before the Third Circuit issued its 2020 opinion, his due-process rights were violated at the second resentencing in October 2021. (D.E. 498 at 2.) As an initial matter, it is unclear whether John waived this argument. In any event, John has offered no facts to show that he had a legitimate expectation of finality in his sentence, and therefore, this Court holds that John—like Carolyn—did not have a crystallized expectation of finality in his sentence while it was on direct appeal to the Third Circuit.

[10] Here, Defendants again rely on several out-of-circuit cases in an effort to create a bright-line, "I-finished-my-sentence" rule under the Due Process Clause. (D.E. 493-1 at 18–21.) Defendants' arguments are, once again, unpersuasive. The cases cited by Defendants do not bind this Court and, in any event, are distinguishable from the case at bar.

**CONCLUSION**

      For the foregoing reasons, Defendants' Motion is **DENIED**.[11]  An appropriate order follows.

                                                                   /s/ Susan D. Wigenton
                                                          **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties

---

[11] On May 10, 2023, counsel for Carolyn requested that this Court limit the scope of the Probation Office's Pre-Sentence Report ("PSR"). (D.E. 491.) John joined this request on May 30, 2023. (D.E. 495.) Defendants contend "that the Probation Department is simply in no position to determine the 'circumstances of the offense' in this case," and that "the inclusion of the Probation Department's determination as to the 'circumstances of the offense' may add an unwarranted, and prejudicial, imprimatur of reliability to the government's narrative." (D.E. 491 at 2.) Defendants further assert that, "[s]ince the Guidelines calculation depends upon the underlying factual findings, such a calculation cannot be made" by the Probation Office. (*Id.*) This Court disagrees and finds no compelling reason to limit the preparation of the PSR. Defendants are free to dispute the content and scope of the PSR at the time of resentencing. This Court will fairly consider the arguments of all parties. Accordingly, Defendants' request to limit the scope of the PSR is denied.