**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

September 15, 2023

Rubin Sinins
Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins
505 Morris Avenue
Springfield, NJ 07081
*Counsel for Defendant Carolyn Jackson*

Carol Dominguez
Office of the Federal Public Defender
1002 Broad Street
Newark, NJ 07102
*Counsel for Defendant John E. Jackson*

Desiree L. Grace
Office of the United States Attorney
970 Broad Street
Newark, NJ 07102
*Counsel for the United States of America*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

    Re:    *United States v. Carolyn Jackson, et al.*
            **Criminal Action No. 13-290 (SDW)**

Counsel:

On August 18, 2023, the Government submitted a letter (D.E. 505 ("Letter")) requesting that, notwithstanding the recently filed notices of appeal (D.E. 503, 506), this Court proceed with resentencing Defendants Carolyn Jackson ("Carolyn") and John E. Jackson's ("John," together with Carolyn, "Defendants"). This Court having considered the parties' submissions, and for the reasons discussed below, finds that it has jurisdiction to resentence Defendants on October 11, 2023.

**DISCUSSION**

A.

This Court writes only for the parties and, accordingly, incorporates the background and sentencing history section from its Letter Opinion dated August 7, 2023 ("August 7 Opinion").

(D.E. 500 at 1–3.) In sum, Defendants "inflicted devastating abuse on their three young foster children—Joshua, J, and C—over the course of five years, causing serious and lasting harm." (D.E. 487-1 at 3.) Defendants were first indicted in federal court on April 29, 2013.[1] (D.E. 1.) On July 8, 2015, following a 39-day jury trial, Defendants were found guilty of a majority of the counts with which they were charged in the superseding indictment.[2]

In the eight years since the jury pronounced its verdict, Defendants have been thrice sentenced, and each time, the Third Circuit has vacated those erroneous sentences. Most recently, on April 3, 2023, the Third Circuit vacated the sentences that were imposed on Defendants in October 2021. (*See generally* 484, 487.) Accordingly, the panel expressly remanded the case "for resentencing," and "direct[ed] the Chief Judge of the United States District Court for the District of New Jersey to assign this case and all related matters to a different district court judge." (D.E. 487-1 at 12.) On April 19, 2023, Chief Judge Renee M. Bumb reassigned the case to this Court. (D.E. 485). Resentencing has been set for October 11, 2023. (D.E. 490.)

## The Motion to Bar Resentencing

On May 18, 2023, Carolyn filed a motion to bar resentencing, which John joined and supplemented. (D.E. 493, 495, 497–98.) Therein, Defendants argued that, because they each had at one time finished serving their erroneous sentences before the Third Circuit vacated them,[3] the imposition of any further sentence now would violate their rights under both the Double Jeopardy and Due Process Clauses of the Constitution. (*See generally* D.E. 493-1; D.E. 498.)

On August 7, 2023, this Court denied Defendants' motion. (D.E. 500–01.) In so doing, this Court held, among other things, that Defendants' arguments had no basis in precedent, the principles of fundamental fairness, or practical application. (*See generally* D.E. 500.) Shortly thereafter, Defendants filed notices of appeal to the Third Circuit. (D.E. 503, 506.)

---

[1] After a mistrial was declared in November 2014, the Government again charged Defendants in a superseding indictment on January 15, 2015. (D.E. 175.)

[2] As this Court explained in the August 7 Opinion:

> Defendants were found guilty of the following: conspiring from August 2005 to April 2010 to engage in acts that endangered their three foster children (Count 1); physically assaulting all three children with various objects and their hands (Counts 3, 6, and 12); withholding adequate water from J and C and prohibiting these children from drinking water (Counts 4 and 8); forcing J to ingest hot sauce, red pepper flakes, and raw onion, and forcing C to ingest hot sauce and red pepper flakes (Counts 5 and 9); and withholding prompt and proper medical care for C's dehydration and elevated sodium levels (Count 11). In addition, the jury found Carolyn—but not John—guilty of withholding sufficient nourishment and food from Joshua (Count 2), and "[c]ausing [C] to ingest excessive sodium and a sodium-laden substance while restricting [C's] fluid intake, causing [C] to suffer hypernatremia and dehydration, a life[-]threatening condition," (Count 10).

(D.E. 500 at 2.)

[3] Carolyn argued that she completed her sentence in October 2022—while the most-recent appeal was pending before the Third Circuit. (D.E. 493-1 at 7.) John contended that he completed serving his second sentence on September 19, 2019—before the Third Circuit vacated it on June 26, 2020. (D.E. 498 at 2.)

On August 18, 2023, the Government submitted the Letter, in which it argues that Defendants' appeals are substantively and procedurally frivolous and, thus, do not prohibit this Court from proceeding with resentencing. (D.E. 505.) On August 22, 2023, Carolyn filed a letter in opposition, which John again joined in a short letter. (D.E. 507, 508.) For the reasons set forth below, this Court finds that Defendants' appeals are procedurally frivolous and that, in any event, the unique circumstances of this case weigh heavily in favor of proceeding with resentencing.

C.

"[T]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 761 (3d Cir. 2018) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). Not all decisions by the district court are immediately appealable, however. Nor does a notice of appeal automatically divest the district court of jurisdiction.

In criminal cases, courts of appeals generally have jurisdiction under 28 U.S.C. § 1291 to review "'final decisions' of federal district courts." *United States v. Alexander*, 985 F.3d 291, 294 (3d Cir. 2021) (citing *United States v. Wright*, 776 F.3d 134, 139 (3d Cir. 2015)). "This 'final judgment' rule ordinarily 'prohibits appellate review until conviction and imposition of sentence' in a criminal case." *Wright*, 776 F.3d at 140 (quoting *Flanagan v. United States*, 465 U.S. 259, 263 (1984)). "[I]n a narrow range of situations,"[4] however, criminal defendants may seek "immediate appellate review under the collateral order doctrine." *Alexander*, 985 F.3d at 294 (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–47 (1949)). To fall within the ambit of the collateral order doctrine, the appealed order must: "'[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.'" *Id.* (alterations in original) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)).

In *Abney v. United States*, the Supreme Court held that a pretrial order denying a motion to dismiss an indictment on double jeopardy grounds constitutes a final order for purposes of 28 U.S.C. § 1291. 431 U.S. 651, 662 (1977). Three years after the Supreme Court decided *Abney*, the Third Circuit recognized that the Abney rule, when coupled with the divestiture rule, "provid[ed] criminal defendants with an effective new tool for delaying their trials for long periods of time." *United States v. Leppo*, 634 F.2d 101, 104 (3d Cir. 1980). In other words, "[a]n Abney appeal delays trial because ordinarily the trial court loses its power to proceed once a party files a notice of appeal," and criminal defendants were taking advantage of that delay by filing frivolous appeals. *Id.* In an effort to balance the principles underlying *Abney* and the divestiture rule "against the public policy favoring the rapid disposition of criminal cases," the Third Circuit held

---

[4] The limited scope of the collateral order doctrine is well settled. As the Third Circuit has explained:

> Time and again, the Supreme Court has reiterated the limited nature of this doctrine . . . . This admonition holds special significance in criminal cases, where we must apply the collateral-order exception "with the utmost strictness," primarily "to avoid delays due to piecemeal appellate litigation, as these delays may work to the detriment of the rights of the defendant or prejudice the prosecution's ability to prove its case." Such appeals are thus permitted "only in the most rare and exceptional circumstances."

*Id.* (internal citations omitted).

that a district court is not divested of jurisdiction if it finds "the [criminal defendant's] motion to be frivolous and support[s] its conclusions by written findings." *Id.* at 104–05.

At issue in the instant dispute is whether Defendants' recent appeals divested this Court of jurisdiction to proceed with resentencing. The Government, citing *Leppo*, contends that Defendants' appeals are both substantively and procedurally frivolous. (D.E. 505.) Put differently, the Government argues that Defendants' double jeopardy and due process arguments have no possible validity and that Defendants' appeals are premature because the August 7 Opinion and its accompanying order were neither a final judgment nor an order within the scope of the collateral order doctrine. (*Id.*) Because Defendants' appeals do not satisfy the collateral order exception, and because the unique circumstances of this case weigh heavily against divestiture at this stage, this Court finds that it has jurisdiction to resentence the Defendants.

### Defendants' Appeals Are Procedurally Frivolous

Defendants argue that an immediate appeal is necessary here to protect their interests against being twice punished for the same crime. (*See generally* D.E. 507–08.) At bottom, Defendants insist that resentencing them would be "effectively unreviewable" on appeal. (*Id.*) Defendants' interests here are wholly different from the interests underlying the *Abney* decision, and consequently, Defendants' arguments must fail.

In crafting the *Abney* rule—that *pretrial* motions to dismiss an indictment on double jeopardy grounds fell within the collateral order doctrine—the Supreme Court was careful to identify the interests at stake and delineate the extent to which those interests would be lost if they were not subject to immediate appeal. *Abney*, 431 U.S. at 663 (explaining that the "conclusion that a defendant may seek immediate appellate review of a district court's rejection of his double jeopardy claim is based on special considerations permeating claims of that nature which justify a departure from the normal rule of finality"). As the *Abney* Court explained:

> [T]he Double Jeopardy Clause protects an individual against being twice convicted for the same crime, and that aspect of the right can be fully vindicated on an appeal following final judgment, as the Government suggests. However, this Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to trial for the same offense.

*Id.* at 660–61 (citation omitted). It is that latter guarantee—the guarantee that an individual "will not be forced . . . to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense"—that supported the *Abney* decision, *id.* at 661; and it is that guarantee which, as the Supreme Court remarked, "[o]bviously . . . would be lost if the accused were forced to 'run the gauntlet' a second time before an appeal could be taken," *id.* at 662. Simply put, a *pretrial* order denying a motion to dismiss an indictment on double jeopardy grounds is effectively unreviewable on appeal from a final judgment, because the harm from which the double jeopardy clause protects, in that context, is the trial itself. *Id.* at 660 ("[The defendant] is contesting the very authority of the Government to hale him into court to face *trial on the charge* against him." (emphasis added)).

Defendants' interests at stake here are more limited and can be reviewed on appeal following imposition of a sentence. To be sure, "[t]he interest protected by the Double Jeopardy Clause in th[e] multiple punishment context is confined to 'ensuring that the total punishment [does] not exceed that authorized by the legislature.'" *United States v. Pollen*, 978 F.2d 78, 84 (3d Cir. 1992) (quoting *Jones v. Thomas*, 491 U.S. 376, 381 (1989)); and as the *Abney* Court noted, the interest against being twice punished for the same crime "*can be fully vindicated on an appeal following final judgment*," *Abney*, 431 U.S. at 660 (emphasis added). In sum, Defendants' arguments clearly do not satisfy the third element of the collateral order doctrine and, accordingly, are procedurally frivolous.[5]

### Other Considerations Weigh in Favor of Resentencing

In its August 7 Opinion, this Court noted the "tortured procedural history" of this case. (D.E. 500 at 8.) Defendants' first sentencing occurred in 2015, and after nearly eight years and three timely—and meritorious—appeals to the Third Circuit, they have yet to be subject to a sentence free from judicial error. That judicial error largely stemmed from the sentencing judge's failure "to follow [the Third Circuit's] mandate." (D.E. 487-1 at 3.) In its April 3, 2023 opinion, the Third Circuit expressly remanded Defendants' case for resentencing. (*Id.* at 12.) It is well settled that this Court must do so. (*Id.* at 8 ("It is a well-established principle of law that a district court must follow an appellate court's mandate.").)

In addition to this Court's obligation to follow the Third Circuit's mandate, principles of judicial economy and the public's interest in the rapid adjudication of criminal prosecutions weigh heavily in favor of resentencing Defendants. As the *Abney* Court explained, "[a]dherence to th[e] rule of finality has been particularly stringent in criminal prosecutions because 'the delays and disruptions attendant upon intermediate appeal,' which the rule is designed to avoid, 'are especially inimical to the effective and fair administration of the criminal law.'" *Abney*, 431 U.S. at 657. The *Leppo* Court cited similar concerns in rejecting "[a] ritualistic application of the divestiture rule"—*i.e.*, it "conflicts with the public policy favoring rapid adjudication of criminal prosecutions," and "provid[es] criminal defendants with an effective new tool for delaying their trials for long periods of time." *Leppo*, 634 F.2d at 104. Accordingly, in rejecting a per se divestiture rule, the *Leppo* panel adopted the "reasoned choice" approach propounded by the Fifth Circuit in *United States v. Dunbar*, 611 F.2d 985, 988 (5th Cir. 1980) (en banc), which provides:

> On the one hand, the Court must recognize that the failure to review a colorable double jeopardy claim before trial begins creates a substantial risk that the accused's constitutional rights will be infringed. On the other hand, we must weigh the concern . . . that

---

[5] Defendants contend that the Third Circuit's exercise of jurisdiction in *United States v. Washington*, 549 F.3d 905, 911 (3d Cir. 2008) indicates that this Court's August 7 Opinion and Order are immediately appealable. (D.E. 507 at 3–4.) Defendants' reliance on *Washington* is misplaced. In *Washington*, the district court—rather than the Third Circuit—vacated the defendant's sentence and sought to impose an increased sentence. *Washington*, 549 F.3d at 911. The appeal arose from the district court's decision to exercise its "'inherent power' to vacate its own judgment" of sentence years after the sentence was imposed. *Id.* Here, the posture is altogether different. Each of Defendants' three sentences has been vacated by the Third Circuit, and this Court is resentencing Defendants following the Third Circuit's most-recent decision to remand the matter for resentencing. As such, unlike *Washington*, this matter is not yet—nor has it ever been—"final" for purposes of 28 § U.S.C. 1291. *Wright*, 776 F.3d at 140 ("This 'final judgment' rule ordinarily 'prohibits appellate review until conviction and imposition of sentence' in a criminal case." (quoting *Flanagan*, 465 U.S. 259, 263 (1984)).

> the divestiture of jurisdiction rule "leaves the court powerless to prevent intentional dilatory tactics, forecloses without remedy the nonappealing party's right to continuing trial court jurisdiction, and inhibits the smooth and efficient functioning of the judicial process."

*Leppo*, 634 F.2d at 105 (quoting *Dunbar*, 611 F.2d at 988). The Third and Fifth Circuits are not alone in adhering to these principles. *See, e.g.*, *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) ("The divestiture of jurisdiction rule is . . . not a per se rule. It is a judicially crafted rule rooted in the interest of judicial economy, designed to 'avoid confusion or waste of time resulting from having the same issues before two courts at the same time.' Hence, its application is guided by concerns of efficiency and is not automatic." (internal citations omitted)); *United States v. Rodriguez-Rosado*, 909 F.3d 472, 477–78 (1st Cir. 2018) ("The [Abney] rule . . . is rooted in concerns of judicial economy, crafted by courts to avoid the confusion and inefficiency that would inevitably result if two courts at the same time handled the same issues in the same case. Hence its application turns on concerns of efficiency and isn't mandatory." (internal citations omitted)).

Against the backdrop of that authority, this Court finds that the principles of judicial economy, the public's interest in the rapid adjudication of criminal cases, and the Third Circuit's unambiguous mandate weigh heavily against a ritualistic application of the divestiture rule. Undoubtedly, applying the divestiture rule here would further delay the already-protracted sentencing history of this case. As Defendants are well aware, "[i]t is not uncommon for an appeal to take a full year before final resolution." *Leppo*, 634 F.2d at 104. The public, however, has an interest in the rapid resolution of these criminal prosecutions; as do the Defendants and, importantly, the victims who suffered from Defendants' abuse. Principles of judicial economy would similarly be served, as Defendants' appeals of this Court's August 7 Opinion and its accompanying order will be considered alongside any appeals related to the sentence that will be imposed by this Court.

In sum, Defendants' substantively specious[6] and procedurally frivolous appeals present no compelling reason for this Court to deviate from the Third Circuit's unambiguous mandate. The unique circumstances of this case, paired with the principles underlying the divestiture rule, weigh heavily in favor of proceeding with resentencing. Therefore, resentencing will proceed as scheduled.

---

[6] While this Court declines to find the Defendants' appeals substantively frivolous, the arguments therein are wholly unsupported by binding precedent, the principles of fundamental fairness, and practical considerations. Third Circuit precedent, however, has left open the possibility that a criminal defendant's erroneous sentence could become final—and thus receive double jeopardy or due process protection—after a defendant has fully served it. (*See generally* D.E. 500.) As such, this Court finds it possible, albeit extremely unlikely, that Defendants' arguments are valid. That is especially so because "[d]ouble jeopardy is an area of the law filled with technical rules, and the protections it affords defendants might at times be perceived as technicalities." *Jones*, 491 U.S. at 387. Given the dearth of dicta leaving open the possibility for an "I-finished-my-sentence" exception in the double jeopardy and due process contexts, this Court will not find that Defendants' arguments are substantively frivolous—however impractical such a rule may be in the context of direct appeals.

## **CONCLUSION**

For the foregoing reasons, the Government's request is **GRANTED**. An appropriate order follows.

                                                 /s/ Susan D. Wigenton  
                                            **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk  
cc:      Parties